**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

STEPHANIE PIAZZA,

      Plaintiff,

         v.

JOSEPH LAKKIS,

      Defendant.

CIVIL ACTION NO. 3:11-cv-2130

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is Defendant Joseph Lakkis's Motion to Dismiss of Plaintiff Stephanie Piazza's Complaint.  In her Complaint, Piazza alleges that she was subjected to an unreasonable use of force and an unlawful arrest and prosecution by Officer Lakkis.  As such, she has alleged violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as state law claims for malicious prosecution, assault, battery, and false arrest / imprisonment.  Piazza's Fourteenth Amendment claims must fail as her claims most properly arise under the Fourth Amendment, and her claims for unlawful arrest must also fail as there was probable cause for her arrest on at least one of her charges.  Piazza has also failed to allege the necessary deprivation of liberty for a proper Fourth Amendment claim for malicious prosecution, but will be given leave to amend as to that element.  However, Piazza has properly pleaded a Fourth Amendment claim of excessive force as well as claims under state law for malicious prosecution, assault, and battery.  Therefore, Officer Lakkis's Motion to Dismiss will be granted in part and denied in part.

## **BACKGROUND**

Plaintiff Stephanie Piazza alleges the following in her Complaint.  On July 11, 2010, Piazza was driving to the Sugar Notch Bar and Grille in Sugar Notch, Pennsylvania.  Piazza came upon Defendant Lakkis, a patrolman for the Sugar Notch Police Department who was on duty conducting traffic for the Holy Family Church bazaar.  Officer Lakkis motioned Piazza to stop her car in order to allow pedestrians to cross the street.  After they had completed their crossing, Piazza began to roll forward.  Officer Lakkis then stopped Piazza and "started screaming at her that she was going to kill someone."  (Compl. at ¶ 13, Doc. 1.)  After directing her to pull off the roadway, Officer Lakkis continued screaming at Piazza with his head inside the open window of the car.  When Piazza politely inquired as to what the problem was, she was directed not to talk back.

Officer Lakkis informed Piazza that she was going to receive three motor vehicle citations, in particular for not wearing her seatbelt.  Piazza asked Officer Lakkis to "wait a minute" and to "please listen" but was told to keep her mouth shut.  Piazza proceeded to inform Officer Lakkis that, because she is on dialysis and has a catheter, she cannot wear a seatbelt for documented medical reasons.  Officer Lakkis responded: "That's it.  License, registration and insurance.  You're going in."

At that point, Piazza started to experience complications associated with her diabetes requiring her to check her blood sugar.  Piazza phoned a friend for assistance.  At the same time, Officer Lakkis informed Piazza that her license was expired and that her car was going to be towed.  Once Piazza's friend finally arrived, Officer Lakkis ordered him to "get away or you will be next."

Officer Lakkis left Piazza in her vehicle, at which point she began to experience

2

diabetic symptoms, including dizziness and nausea.  Piazza exited her car to find Officer

Lakkis and to tell him that she needed to retire to a cool spot to check her blood sugar.

Instead, Officer Lakkis ordered Piazza to return to her car.  Piazza protested that it was a

medical emergency, but "Lakkis continued to scream at her to get back in the car." (*Id.* at

¶ 38.) Piazza tried to plead with Officer Lakkis, but "Lakkis grabbed Ms. Piazza by her left

arm, dragged her, flipped her onto the police car, causing her dress to lift and expose her

underwear, smashed her face into the police car and handcuffed her." (*Id.* at ¶ 40.) Officer

Lakkis was crushing Piazza against the police cruiser, causing her to become panicked that

her catheter would be dislocated and that she would bleed to death as a result.  Piazza

pleaded with Officer Lakkis, trying to communicate the seriousness of the situation, but

Lakkis continued to slam Piazza against the police cruiser.

Piazza was thrown in the back of the cruiser, landing on her catheter and again

exposing her underwear.  Piazza called for help, expressing to Officer Lakkis that she could

not breath and that she believed her arm to be broken.  Officer Lakkis did not attempt to

help, but instead smiled at Piazza through the cruiser's window.  Because she still had her

cell phone, Piazza again called her friend for help.  Approximately fifteen minutes later, an

EMT arrived on the scene.  Piazza's hands had turned purple, necessitating the loosening

of her handcuffs.  She was transported to General Hospital.  As a result of the ordeal,

Piazza sustained injuries including a wrist sprain, bruising, and an elevated blood sugar

level requiring emergency medical treatment.

Piazza was charged with resisting arrest, 18 Pa.C.S.A. § 5104, obstructing

administration of law, 18 Pa.C.S.A. § 5101, and disorderly conduct, 18 Pa.C.S.A. §

5503(a)(4), as well as vehicle code summary offenses for failure to use a restraint system,

75 Pa.C.S.A. § 4581(a)(2), driving without a license, 75 Pa.C.S.A. § 1501(a), and failure to obey authorized persons directing traffic, 75 Pa.C.S.A. § 3102.  Officer Lakkis did not have probable cause for these criminal charges, and they were only filed in order to provide legitimacy to his brutal conduct.  District Justice Joseph Halesey dismissed the charges of obstructing administration of law and failure to use a restraint system, but everything else was held for court.  The remaining two criminal charges were withdrawn on August 29, 2011.  Piazza pleaded guilty to the charges of driving without a license and to obedience to authorized persons directing traffic.  (Comm. Pleas Crim. Docket, Def.'s Ex. B.)

On November 14, 2011, Piazza filed the instant Complaint bringing claims under 42 U.S.C. § 1983[1] for: (1) excessive force in violation of the Fourth and Fourteenth Amendments; (2) unlawful arrest in violation of the Fourth and Fourteenth Amendments; and (3) malicious prosecution in violation of the Fourth and Fourteenth Amendments. Piazza also lodges state law claims for malicious prosecution, assault, battery, and false arrest / imprisonment.  This motion is now ripe for the Court's review.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims.  *See Scheuer v. Rhodes,* 416 U.S. 232,

---

[1] Generally, a claim under § 1983 requires "two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).  Here, there is no argument that Officer Lakkis was not acting under color of state law at all relevant times.

236 (1974).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.*
A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Detailed factual allegations are not required.  *Twombly,* 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts.  *Id.*

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

## II.  Analysis

### A.      Piazza's § 1983  Claim for Unreasonable Use of Force (Count I)

Officer Lakkis argues that the facts alleged in the Complaint are insufficient to establish "an unconstitutional and/or an unprivileged use of force." (Def.'s Br. at 16, Doc. 12.) For the reasons below, Piazza has successfully made a Fourth Amendment claim for unreasonable use of force that survives this Motion to Dismiss. Her Fourteenth Amendment claims, however, will be dismissed under the more specific provision rule.

### 1.      Merits of the Unreasonable Use of Force Claim

The Fourth Amendment specifically prohibits unreasonable searches and seizures,

6

and a claim for excessive force under that Amendment must therefore show the existence of such an unreasonable seizure. *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011) (citations omitted). As the implementation of excessive force itself constitutes a seizure, "a court must determine the objective 'reasonableness' of the challenged conduct, considering 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)). This standard is one of objective reasonableness, and looks to "'the reasonableness of the officer's belief as to the appropriate level of force[,]' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20 vision of hindsight.'" *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). Factors to consider–among other things–include the severity of the underlying crime, the immediacy of the threat posed by the individual, the potential that the individual is armed, the extent to which the suspect is attempting to resist or escape, the length of the encounter, and the ratio of suspects to police officers. *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). Finally, "[t]he absence of physical injury or contact does not necessarily mean that excessive force was not used." *Periera v. Lizzio*, No. 3:09–CV–1024, 2012 WL 1205750, at * 2 (M.D. Pa. Apr. 11, 2012).

According to the terms of the Complaint,[2] the amount of force alleged is sufficiently

---

[2] The Court declines to consider the facts contained within Officer Lakkis's Affidavit of Probable Cause in regard to the instant Motion to Dismiss. Even assuming that it would be appropriate to consider this document under *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. Pa. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"), the Affidavit merely raises issues of fact

unreasonable to allow this claim to proceed beyond the motion to dismiss stage.   In essence, the Complaint paints a situation in which Piazza politely approached Officer Lakkis to explain a worsening medical situation and instead was repeatedly slammed against a police cruiser despite warnings that such could be fatal.   Thus, the thrust of Piazza's Complaint is that she was beat up by a police officer over a series of escalating misunderstandings.   The accuracy of these allegations is for further factual development, but the Complaint on its face must survive on this claim.   Moreover, viewed in light of the underlying crimes–vehicle summary offenses–a very minimal amount of force would have been objectively reasonable.   Officer Lakkis retorts that "he was confronting a situation wherein he was dealing with a recalcitrant, or at least uncooperative, disobedient suspect, and possibly contending with more than one person." (Def.'s Br. at 16, Doc. 12.)  Yet, the Complaint suggests that this is an overstatement.  Instead, the Complaint describes one to two individuals, neither of whom exhibiting any indication that they were armed or presenting any threat, making reasonable requests of the Officer.  These allegations do not warrant such a forceful intervention.

The cases cited by Officer Lakkis are inapposite to the instant case.  As an initial matter, they both concern motions for summary judgment and therefore derive their holdings from developed factual records.  However, on those facts, *Marcavage v. City of Philadelphia* involved a plaintiff who, while approaching an ongoing seizure of another individual, was put into a choke hold after reaching for an unknown silver object.  778 F.

---

which are not properly considered at this stage.  *See Alexis v. Delaware*, No. Civ.A. 00-1018-SLR, 2001 WL 640805, at * 4 (D.Del. May 16, 2001) (declining to consider the police report at the motion to dismiss stage as raising only issues of fact).

Supp. 2d 556, 571 (E.D. Pa. 2011). That situation presented far more objective danger than the one alleged in the instant Complaint. Similarly, *Thomas v. City of Erie* affirmed a district court's decision to grant summary judgment against an excessive force claim where the police pulled a suspects' hands behind his back to handcuff him, and where his head was hit on the police van when he was put into it. 236 Fed. Appx. 772, 776 (3d Cir. Pa. 2007). Unlike Piazza's case, were there are allegations of gratuitous force, the two instances of force in *Thomas* were arguably necessary or accidental. Therefore, Piazza's claim for excessive force survives on the allegations of the Complaint.

### 2. Qualified Immunity

Under the doctrine of qualified immunity, government officials are immune from suit for damages where their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (internal quotations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects government officials whether they have made a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id.* To determine whether qualified immunity applies, a court must examine "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (internal citations omitted). A court may exercise its discretion in choosing which prong to address first, considering the circumstances of the particular case. *Id.* at 236.

On the allegations before the Court, qualified immunity is not warranted.  As noted above, the Complaint sufficiently alleges that the amount of force used by Officer Lakkis was unreasonable.  Further, at the time of the incident, it was clearly established that the use of excessive force would violate the Fourth Amendment.  In particular, the Supreme Court held in 1989 that "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct" and directing that such force be guided by a reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395-96 (1989); *see also Bannan v. City of Philadelphia*, Civ. Act. No. 11-cv-4680, 2012 WL 406325, at *4 (E.D. Pa. Feb. 09, 2012) (holding that a reasonable officer in 2010 would know that excessive force was a clearly established constitutional violation, specifically "that it would be excessive to shove a non-resisting, non-threatening, non-armed man in the back hard enough that he falls to the ground, merely to move him away from a Walmart entrance and arrest him for disorderly conduct.").  Thus, on the allegations of the Complaint, qualified immunity is not warranted.

### 3.    The More Specific Provision

Officer Lakkis argues that Piazza's Fourth Amendment claims are coextensive with her Fourteenth Amendment due process claims, and that the more specific provision rule therefore dictates that these constitutional claims should proceed solely as Fourth Amendment claims.

Although the Third Circuit has previously held that a claim of "excessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process," *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. N.J. 1999) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)), in 2010, it specifically endorsed the more

10

specific provision rule in *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 261 n.10 (3d Cir. 2010). Moreover, in adopting the more specific provision rule, the Court of Appeals cited *Tesch v. County of Green Lake*, 157 F.3d 465, 471-72 (7th Cir. 1998), which applied the rule to preclude a due process violation for exposure to danger in the course of an arrest as this harm was "more appropriately viewed as either a claim for excessive force in an arrest or a general claim against an unreasonable seizure."

Following *Betts*, other district courts have precluded parallel Fourth and Fourteenth Amendment claims on all three of Piazza's § 1983 causes of action. *See Scutella v. City of Erie Bureau of Police*, CA 11-198, 2012 WL 1788136, at *4, (W.D. Pa. Apr. 20, 2012) (finding allegations of excessive force predicated on the Fourth Amendment and dismissing the due process claim); *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 685 (M.D. Pa. 2010) (Vanaskie, J.) (dismissing Fourteenth Amendment excessive force claim as it was "clear that the Fourth Amendment, as opposed to the Fourteenth Amendment, applies to Plaintiffs' excessive force claims"); *Celestine v. Foley*, CIV.A. 10-1775 NLH, 2010 WL 5186145, at *4 (D.N.J. Dec. 14, 2010) (applying the more specific provision rule to malicious prosecution, finding it "most appropriately analyzed under Fourth Amendment jurisprudence."); *Fennimore v. Lower Twp.*, CIV. 09-2090 RMB/KMW, 2011 WL 1705599 (D.N.J. May 4, 2011) (dismissing Fourteenth Amendment claims for false arrest, excessive force, and malicious prosecution in part because they must fall "under the 'more-specific provision' of the Fourth Amendment.").

Therefore, as Piazza's constitutional claims in Counts I, II, and III are more properly cognizable as violations of the Fourth Amendment, her Fourteenth Amendment claims in

those counts will be dismissed.[3]

## B.   Piazza's § 1983 Claim for Unlawful Arrest (Count II)[4]

A § 1983 claim for unlawful arrest requires allegations that a plaintiff was "arrested by a State actor without probable cause." *Palma v. Atl. County*, 53 F. Supp. 2d 743, 755 (D.N.J. 1999). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Such "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). This analysis looks

---

[3]That the Fourth Amendment's protections have been applied to state actors through the Fourteenth Amendment does nothing to alter this analysis. In *Salerno v. Galli*, 3:CV-07-2100, 2009 WL 3245532, at *4 (M.D. Pa. Oct. 7, 2009), the Hon. Judge Vanaskie dismissed a plaintiff's Fourteenth Amendment claims, noting that although the Fourth Amendment's protections against unreasonable searches and seizures have been applied to state actors through the Fourteenth Amendment, this was "irrelevant" to claims falling "within the purview of Fourth Amendment Jurisprudence." Conversely, in *Garafola v. Lackawanna County Corr. Care, Inc.*, 3:07CV2305, 2009 WL 1609401, at *2 n.1 (M.D. Pa. June 9, 2009) (Munley, J.), references to the Fourteenth Amendment were allowed to remain in a complaint only "to the extent that the Fourteenth Amendment incorporates the Eighth Amendment and makes it applicable to state actors." Here, however, the determination is that Piazza may not proceed under a parallel theory of substantive due process, not that she must omit all passing references to the Fourteenth Amendment. *See also Ward v. Noonan*, 3:11-CV-945, 2011 WL 6100851, at *6 (M.D. Pa. Dec. 7, 2011) (Caputo, J.) (acknowledging that while the Fourth Amendment applies to the states through the Fourteenth Amendment, that a plaintiff "need not include a cause of action under the Fourteenth Amendment in order to state a claim pursuant to § 1983 for a violation of his . . . Fourth Amendment rights.").

[4]In Count II of her Complaint, Piazza avers that Officer Lakkis's conduct "including his seizure of Ms. Piazza, constituted an unreasonable seizure under the Fourth Amendment to the United States Constitution." (Compl. at ¶ 69, Doc. 1.) Since there is no argument that the initial traffic stop was unlawful, the Court interprets Count II of the Complaint as a claim made solely for unlawful arrest. This construction fully conforms with the parties' framing of the claim in their respective briefs.

not to the guilt or innocense of the accused, but focuses solely on the existence of probable cause at the time of arrest.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988)).  Such probable cause "need only exist as to any offense that could be charged under the circumstances."  *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).

From the face of Piazza's Complaint, it is clear that there was probable cause for her arrest as to at least one of the offenses she was charged with.  In particular, the Complaint establishes that Piazza was driving her vehicle without her seatbelt and with an expired driver's license, both of which are offenses under Pennsylvania law.  (Compl. at ¶¶ 24, 30, 55, Doc. 1.)  That these are summary offense charges does not revive Piazza's claim for unlawful arrest.  *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) (Caputo, J.).  In *Kokinda*, the plaintiff argued that the defendant police officers lacked probable cause to arrest him for any *crime*, but conceded that there was probable cause to arrest him for the summary offense of harassment.  This, the plaintiff argued, exposed him only to a ticket but not to arrest.  There, I concluded that this argument did not have merit, and found that the plaintiff's admission that the charge was based on probable clause precluded an overall claim for false arrest under § 1983.  Specifically, I noted that the plaintiff's argument was foreclosed by *Virginia v. Moore*, 553 U.S. 164, 176 (2008), which held that an officer may arrest an individual for the violation of any crime committed in their presence, even if that crime is a non-arrestable offense under state law.

Here, a similar result it warranted in light of Piazza's guilty plea and indication that she was not in compliance with the law.  Specifically, a fair reading of Piazza's Complaint indicates that she was driving with an expired license and that she was charged–among

13

other offenses–with violating Pennsylvania law requiring drivers to be licensed: 75 Pa. C.S.A. § 1501(a).  As this provision makes it illegal to operate a motor vehicle without a valid driver's licence, it is clear from the allegations of the Complaint that Officer Lakkis had probable cause to arrest Piazza for at least that one transgression.

Further, this particular claim for false arrest is barred by the Supreme Court's decision in *Heck v. Humphrey*.  512 U.S. 477 (1994).  That case held that a plaintiff's § 1983 damages suit may only proceed where the conviction or sentence has been reversed, expunged, or invalidated in some form if it "would necessarily imply the invalidity of his conviction or sentence."  *Id.* at 484.  In other words, *Heck* held that "a § 1983 malicious prosecution claim was subject to the common law requirement that the plaintiff show the prior criminal proceeding terminated in his favor."   *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005) (citing *Heck*, 512 U.S. at 484).  This rule is designed to discourage simultaneous litigation of probable cause and guilt while preventing a petitioner from "succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against creating two conflicting resolutions arising from the same transaction." *Id.*  Piazza's claim for unlawful arrest is therefore *Heck*-barred because the state court records clearly show that Piazza pleaded guilty to the charge or driving without a license and there is no indication that it has been reversed, expunged or otherwise invalidated.  (Def.'s Ex. B at 4.)

Therefore, because the Court finds allegations of probable cause sufficient to support Piazza's arrest for at least one of the violations she was charged with, her claim for false arrest must fail and it is unnecessary to analyze the sufficiency of the additional charges made against Piazza at the time of her arrest.

14

C.    **Piazza's § 1983 Claim for Malicious Prosecution (Count III)**

Officer Lakkis argues that Piazza also cannot maintain a § 1983 claim for malicious

prosecution.  Such a claim under the Fourth Amendment requires that:

> (1) the defendant initiated a criminal proceeding;
> (2) the criminal proceeding ended in [her] favor;
> (3) the defendant initiated the proceeding without probable cause;
> (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).  Here, there is no argument that Piazza's

Complaint does not sufficiently allege that Officer Lakkis had initiated a criminal proceeding

against her with a purpose other than bringing the plaintiff to justice, the first and fourth

elements of the test.  Instead, the controversy lies with the remaining three elements which

will be discussed below.  In particular, while Piazza's § 1983 malicious prosecution claim

fails to plead a proper deprivation of liberty, she will be given leave to amend on this

infirmity.

1.    **Deprivation of Liberty**

While a claim for false arrest "covers damages only for the time of detention until the

issuance of process or arraignment, and not more," a claim for malicious prosecution

"permits damages for confinement imposed pursuant to legal process."  *Kokinda*, 557 F.

Supp. 2d at 591 (quoting *Johnson*, 477 F.3d at 82).  This is because a claim for malicious

prosecution seeks to remedy "the deprivation of liberty accompanying prosecution, not

prosecution itself."  *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)

(citation omitted).  As such, a plaintiff's claim for malicious prosecution begins not with an

arrest, which is not pursuant to legal process, but with the indictment.  *Sershen v. Cholish*, CIV.A. 3:07-CV-1011, 2007 WL 3146357, at *10 (M.D. Pa. Oct. 26, 2007) (Caputo, J.) (citing *Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir.1998)).

In fact, malicious prosecution requires some sort of significant seizure, including "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions." *DiBella*, 407 F.3d at 603.  And, attending one's trial is not such a seizure.  *Id.*  Specifically, in *DiBella*, the Court of Appeals found there was no seizure to support a malicious prosecution claim when the plaintiffs "were never arrested; . . . never posted bail; . . . were free to travel; . . . and did not have to report to Pretrial Services."  407 F.3d at 603.

Here, Piazza acknowledges that she has not alleged that she suffered a deprivation of liberty consistent with the concept of seizure as a result of legal process that Officer Lakkis initiated against her.  (Pl.'s Br. at 35, Doc. 19.)  Instead, in her brief, she avers that it is "undisputed that Ms. Piazza suffered a deprivation of liberty when Officer Lakkis physically seized her and also when she was lodged in the Luzerne County Correctional Facility."  (*Id.*)  As noted above, the initial seizure is not a sufficient basis for a malicious prosecution claim.  Moreover, the documents before the Court do not appear to substantiate the requisite seizure following an indictment as to support a claim of malicious prosecution. Instead, as Officer Lakkis argues, Piazza's bail form seems to indicate that she was released on her own recognizance.  (Def.'s Ex. C at 2.)  Therefore, it is clear that Piazza has not stated a claim upon which relief can be granted for malicious prosecution under § 1983.

Of course, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). Furthermore, Federal Rule of Civil Procedure 15(a) directs the Court to "freely give leave when justice so requires."  This principle applies equally in situations where a plaintiff does not affirmatively seek a leave to amend, though a court may ultimately dismiss if the plaintiff does not submit such an amended pleading.  *Phillips*, 515 F.3d at 245.  Therefore, since it is not clear that Piazza cannot establish this element, she will be given leave to amend.

## 2.    Favorable Termination

Contrary to Officer Lakkis's assertion, Piazza can show that the criminal proceedings have terminated in her favor, the second element of a § 1983 malicious prosecution claim. Initially, Piazza was charged with resisting arrest, 18 Pa.C.S.A. § 5104, obstructing administration of law, 18 Pa.C.S.A. § 5101, and disorderly conduct, 18 Pa.C.S.A. § 5503(a)(4), as well as vehicle code summary offenses for failure to use a restraint system, 75 Pa.C.S.A. § 4581(a)(2), driving without a license, 75 Pa.C.S.A. § 1501(a), and failure to obey authorized persons directing traffic, 75 Pa.C.S.A. § 3102.  In her Complaint, Piazza represents that District Justice Joseph Halesey dismissed the charges of obstructing administration of law and failure to use a restraint system, while the Commonwealth later withdrew the charges for disorderly conduct and resisting arrest.  (Compl. at ¶¶ 59-60, Doc. 1.)  The Common Pleas Court Summary affirms this, and also that Piazza pleaded guilty to the charges of driving without a license and failure to obey authorized persons directing traffic.  (Def.'s Ex. "C".)

17

As to the withdrawn claims, Officer Lakkis argues that they do not constitute a favorable termination as they were nolle prossed.  This is because a nolle prosequi disposition does not automatically indicate a favorable outcome in the malicious prosecution context as "not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (quoting *Hilfirty v. Shipman*, 91 F.3d 573, 579-80 (3d Cir. 1996)).  In particular, a nolle prosequi is a favorable termination "only when their final disposition is such as to indicate the innocence of the accused." *Id.* (quoting Restatement (Second) of Torts § 660, cmt. a).

That these two charges were withdrawn is sufficient to establish that they were favorably terminated at the motion to dismiss stage.  Although somewhat conclusory, Piazza represents that she "prevailed on the criminal charges against her" (Compl. at ¶ 73, Doc. 1), and Officer Lakkis merely retorts that these withdrawn charges were likely nolle prossed as they "were not disposed of until after the Criminal Information had been filed" (Def.'s Br. at 13, Doc. 12).  Even if these charges were nolle prossed, there is no indication in the Complaint or elsewhere that such a disposition was unfavorable.  Thus, while more specific facts could later indicate a similarly unfavorable outcome in Piazza's case, the allegations of the Complaint suffice to establish a claim of malicious prosecution as to these two withdrawn claims.

Piazza's guilty pleas, however, pose a larger threat to her malicious prosecution claim.  It is not enough that Piazza prevailed on the criminal charges against her as a finding of guilt on a related summary charge can thwart a plaintiff's attempt to argue overall favorable termination. *Kossler v. Crisanti*, 564 F.3d 181, 189 (3d Cir. 2009).  Instead, "upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's

18

innocence of the alleged misconduct underlying the offenses charged" in order for favorable termination to exist. *Id.* at 188. If the statutory offenses and the facts of the case "indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element." *Id.* at 188. In particular, *Kossler* pertained to a bar patron had gotten into an altercation with a police officer while trying to break up a fight and was charged with felony aggravated assault and summary offenses of disorderly conduct and public intoxication. *Id.* at 184. The trial court judge dismissed the aggravated assault and public intoxication charges, but found the patron guilty of disorderly conduct, concluding that he "was clearly guilty of some wrongdoing in the altercation notwithstanding . . . that his wrongdoing did not amount to aggravated assault." *Id.* at 185, 189. Considering the facts underlying those particular charges, the Court of Appeals determined that judgment as a whole "did not reflect Kossler's innocence on the night of the fight" and that "all three charges arose from the same course of conduct." *Id.* at 189. As such, the favorable termination rule did not apply to that "indivisible factual basis." *Id.*

Conversely, *Jackson v. Nassan* applied the rule established in *Kossler* to a set of circumstances very similar to the instant matter and found that the favorable termination rule did apply. 2:08CV1054, 2009 WL 2707447, at *4 (W.D. Pa. Aug. 26, 2009). There, a plaintiff received an unfavorable outcome on a charge for following too closely in his car, while the charges for resisting arrest and disorderly conduct were terminated favorably. That court, however, found that the favorable and unfavorable charges "derived from two separate acts of misconduct." *Id.* at *4. Specifically, the charges for resisting arrest and disorderly conduct were designed to punish the plaintiff's alleged misconduct that occurred

19

after he had been stopped for the initial misconduct. *Id.* Thus, notwithstanding the finding of guilt on the traffic infraction, there could still be a favorable outcome on the two charges for the conduct occurring after the stop.   Unlike *Kossler*, it was as if the plaintiff had committed infractions on two wholly separate occasions.

Considering the facts underlying Piazza's charge, a similar result is warranted. A person is guilty of resisting arrest "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104.   Similarly, obstructing administration of law requires that one "intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act," 18 Pa.C.S.A. § 5101, and disorderly conduct requires the creation of a "hazardous or physically offensive condition" 18 Pa.C.S.A. § 5503(a)(4).   All of these offenses look to disruptive behavior in the course of an interaction with an officer, and are agnostic as to the circumstances initiating that interaction.

Here, although Piazza pleaded guilty to the charges of driving without a license and failure to obey authorized persons directing traffic, the unlawful behavior underlying these charges is wholly separate from the unlawful behavior triggering the criminal charges and a claim of malicious prosecution is therefore not precluded by the favorable termination rule. Like following too closely in *Jackson*, the guilty pleas to the two traffic infractions are ancillary to the charges of resisting arrest, obstructing administration of law, and disorderly conduct.  In other words, while the traffic stop or arrest may have been originally predicated

on those claims, additional, discrete acts were required for the additional criminal charges. As such, that Piazza pleaded guilty to the traffic infractions does not indicate that her criminal charges were not favorably terminated.

### 3.    Existence of Probable Cause

Unlike false arrest, malicious prosecution requires an independent inquiry into the existence of probable cause for each charge made against a plaintiff. *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008) (Caputo, J.) (citing *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007)).  In *Wright v. City of Philadelphia*, however, the Third Circuit appeared to have deviated from this tenet in holding–without explanation–that a finding of probable cause on a charge for criminal trespass also disposed of plaintiff's malicious prosecution claim on the other charges brought against her, including burglary.  409 F.3d 595, 604 (3d Cir. 2005).  While this has been flagged as a potential deviation of the above rule, the Court today does not necessarily read it as such.  In particular, *Johnson v. Knorr* noted that the result in *Wright* was driven by the facts of that case, and it did "not understand *Wright* to establish legal precedent of such broad application that it would 'insulate' law enforcement officers from liability for malicious prosecution in all cases in which they had probable cause for the arrest of the plaintiff on any one charge."  477 F.3d 75, 83 & n.9 (3d Cir. 2007). Further, *Kossler v. Crisanti*, 564 F.3d 181, 193 (3d Cir. 2009), noted that, while refusing to squarely address the conflicting precedent, it would be more appropriate to look at probable cause on a charge-by-charge basis because it "does not have the effect of undoing another court's judgment" and therefore would not create conflicting resolutions arising from the same transaction.  *See Heck,* 512 U.S. at 484 (*see* Section (II)(B), *supra*).  Thus, it is proper

21

to require that probable cause exist as to each charge brought against Piazza in order to defeat her claim for malicious prosecution.[5]  *See, e.g., Makboul v. Port Auth. of New York & New Jersey*, CIV.A. 09-3540 KSH, 2011 WL 4594224, at *6 (D.N.J. Sept. 29, 2011) (citation omitted) ("When evaluating the probable cause element of a malicious prosecution claim, courts must analyze each charge separately.").

Thus, the analysis above finding that probable cause existed for at least one of the charges against Piazza will not preclude Piazza's claim for malicious prosecution at the motion to dismiss stage.   And, further factual development is necessary before a determination can be made as to whether probable cause existed on all charges.  Today, however, it suffices that Piazza's complaint properly alleges that she was not intentionally obstructing the administration of law as she was charged under 18 Pa.C.S.A. § 5101, a charge that was not even held over for court by District Justice Halesey.  While it is true that Officer Lakkis obtained a summons based on an affidavit of probable cause on all the charges, this is not inherently indicative of probable cause, although Piazza will need to eventually show "that the maker of the affidavit either stated a deliberate falsehood or acted with a reckless disregard for the truth."  *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir. 1993) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)); *see also Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (finding that "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest.").

---

[5]Further, it is sensible to analyze probable cause differently under malicious prosecution versus false arrest.  Assuming that a plaintiff is charged with at least one crime for which there is probable cause, they may be appropriately arrested regardless of whether there are additional charges for which there is no probable cause.  Probable cause would already be satisfied and the existence of additional charges would add no further quantum of "arrestability."  Conversely, in the malicious prosecution context, additional, unrelated charges without probable cause would incur additional criminal proceedings which would not have existed but-for the addition of unsubstantiated charges.

As to this affidavit, Piazza must eventually substantiate that Officer Lakkis "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and . . . that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson*, 212 F.3d at 786 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)). In a review of the allegations contained within Piazza's Complaint, it is possible that Officer Lakkis's affidavit was sufficiently skewed to lack such a basis of probable cause. Specifically, Piazza alleges that she was attacked by Officer Lakkis after attempting to inform him of her worsening medical condition, and that in the process she "repeatedly told him she had a catheter in her chest and that he could kill her if it comes out." (Compl. at ¶¶ 36-44, Doc. 1.) While Officer Lakkis's affidavit tells a different story, the thrust of Piazza's Complaint is that this affidavit is false–that Officer Lakkis filed the charges against her solely "to cover up and attempt to justify his conduct and to protect himself from the consequences of his act of brutalizing Ms. Piazza."[6] (*Id.* at ¶ 56.) In short, the Complaint makes out a sufficient claim that at least some of the charges made against Piazza were without probable cause and the Court will not address the underlying factual dispute at this motion to dismiss stage.

Therefore, as noted, Piazza's claim for malicious prosecution will be allowed to proceed if Piazza submits an amended complaint showing that she was seized pursuant to legal process.

---

[6]Of course, qualified immunity would not apply to an officer found to have knowingly or recklessly made false statements. *See* Section (II)(A)(2), *supra*; *Johnson v. Anhorn*, 416 F. Supp. 2d 338, 374 (E.D. Pa. 2006) ("Because a reasonable jury could find that [defendant] knowingly or recklessly made false statements on [the] Affidavit of Probable Cause, [defendant] is not entitled to qualified immunity at this stage.").

### D.    State Law Claims

### 1.    State Law Malicious Prosecution (Count IV)

Malicious prosecution under Pennsylvania law includes the same elements as a §

1983 malicious prosecution claim except that it does not require the fifth seizure element.

Specifically, under Pennsylvania law, "a plaintiff alleging common law malicious prosecution

must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding

ended in the plaintiff 's favor; (3) the proceeding was initiated without probable cause; and

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to

justice." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

As noted above in Section (II)(C), *supra*, Piazza has sufficiently plead a claim for

malicious prosecution under § 1983 excepting that she was seized pursuant to legal

process.  Since this element is not required as a matter of state law malicious prosecution,

the malicious prosecution claim under Pennsylvania law will be allowed to proceed.

### 2.    Unlawful Arrest / False Imprisonment (Count VII)

A claim for false arrest made under Pennsylvania state law is coextensive with one

made under § 1983.  *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008)

(Caputo, J.).  The parties address the two claims as such, deferring in their briefs to their

arguments made within the § 1983 context.  As Piazza's § 1983 claim for unlawful arrest

fails due to a finding of probable cause for arrest on at least one of the offenses she was

charged with, *see* Part (II)(B), *supra*, this claim must fail as well.  *See*, *e.g., Kokinda*, 557

F. Supp. 2d at 592-94 (holding a warrantless arrest for a summary offense based on

probable cause precluded federal and state claims for false arrest and false imprisonment).

### 3.   Assault and Battery (Counts V and VI)

Piazza has successfully alleged a claim for assault and battery under Pennsylvania law.  In Pennsylvania, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994) (quoting *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (1950)).  While a police officer may utilize force to effectuate an arrest, such force rises to the level of assault where the force utilized becomes unreasonable.  *Id.*

As established above in Part (II)(A)(1), *supra*, Piazza's Complaint sufficiently alleges that the amount of force utilized by Officer Lakkis in the course of the arrest was unreasonable.  While further factual development may establish that this was not the case, Piazza's Complaint survives a motion to dismiss on this particular claim.

The Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. § 8541 *et seq.*, does not warrant dismissal of this claim.  The PSTCA immunizes local agencies from damages for liability for injury to a person caused by an employee of that agency, and § 8545 specifically extends this immunity to agency employees acting within the scope of their employment.  This immunity is withheld where "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct."  *Id.* at § 8550.  In essence, Pennsylvania law "deprives public employees of immunity for intentional torts."  *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001).  However, the Supreme Court of Pennsylvania has interpreted a police officer's use of physical force to be sufficiently tortious where it is unreasonable: "[a] police

25

officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994); *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 594 (M.D. Pa. 2008) (Caputo, J.) ("claims of assault and battery against police officers performing an arrest might, but do not necessarily, involve willful misconduct."). Thus, in finding above that Piazza's Complaint has sufficiently alleged an unreasonable use of force, the Complaint necessarily also makes a viable claim for assault and battery under state law.

## CONCLUSION

Although Piazza's Fourteenth Amendment claims are precluded by the more specific provision rule, her Complaint sufficiently pleads a claim under the Fourth Amendment for unreasonable use of force (Count I). On her Fourth Amendment malicious prosecution claim (Count III), Piazza's Complaint fails to plead the necessary deprivation of liberty, although she will be given leave to amend solely on this omission. However, as an action for malicious prosecution under state law does not require this element, this claim will be allowed to proceed (Count IV), as will her state-law claim for assault and battery (Counts V and VII). Finally, Piazza's claims for unlawful arrest under both the Fourth Amendment and under state law (Counts II and VII) must fail as at least one of the charges made against Piazza was founded upon probable cause. An appropriate Order follows.


 June 5, 2012                   /s/ A. Richard Caputo
Date                             A. Richard Caputo
                                 United States District Judge